## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

Fatoumata Ouedraogo

      Plaintiff,

      v.

Leopold Bonkoungou and Lucile Bonkoungou Ouedraogo,

      Defendants.

15 CV 1345

Civil Action No.: _____

**COMPLAINT FOR DAMAGES**

**Jury Trial Requested**

Plaintiff Fatoumata Ouedraogo ("Plaintiff" or "Ms. Ouedraogo"), by and through her undersigned attorneys, with personal knowledge as to herself and her actions and otherwise on information and belief, hereby alleges as follows:

### INTRODUCTION

1.    Plaintiff was trafficked and held in forced labor in this district in the household of Defendants Leopold Bonkoungou ("Defendant Bonkoungou") and Lucile Bonkoungou Ouedraogo ("Defendant Bonkoungou Ouedraogo," and collectively with Defendant Bonkoungou, "Defendants") as a domestic worker for approximately four years and two months.

2.    Defendants knowingly and willfully trafficked Plaintiff from Burkina Faso to the United States. The Defendants lured Plaintiff with false promises of legal employment, the opportunity to go to school for the first time, and a green card upon completion of five years of employment. Instead, Defendants forced Plaintiff to work extremely long hours without requisite compensation and denied her time off. Defendants seized Plaintiff's passport and visa, threatened Plaintiff with physical harm, and sexually harassed Plaintiff.

3.    Defendants required that Plaintiff work from approximately 7:00 a.m. to 9:00

p.m., and sometimes later, seven days per week, caring for their infant children, cooking, cleaning, and doing the laundry. Defendants allowed Plaintiff approximately two full days off over the course of her four years of employment and only other, very limited amounts of time off. Defendants paid Plaintiff no salary, claiming instead that they were depositing $200 per month in a bank account for Plaintiff to which she would be given access at the conclusion of her employment. Even if Defendants had paid Plaintiff this meager sum, they would have been flagrantly violating federal and state wage and hour laws. However, Defendants never provided Plaintiff access to this account. Plaintiff worked over four years and was given a total of four payments of approximately $80 to $100 each and a handful of calling cards that cost approximately $2 each, equating to an hourly wage of approximately $0.019 per hour. This willful failure to pay wages violates both state and federal labor laws requiring the statutory minimum wage, overtime pay, and spread-of-hours pay.

4.     Defendants kept Plaintiff completely isolated, preventing her from contact with resources that might have allowed her to learn of her rights. Defendants did not allow Plaintiff to leave the apartment without permission; she was generally only allowed to leave to run short errands for the family. Defendants told Plaintiff that she could be put in jail if she encountered authorities because she did not have her identity documents, which Defendants had seized.

5.     Defendants did not keep their promise that Plaintiff could go to school. Because she spoke no English, Plaintiff could not communicate with anyone outside of Defendants' household, even on the rare occasions when she was allowed out of the apartment.

6.     During her employment with Defendants, Plaintiff was allowed only limited contact with her family. Defendants monitored every word that she spoke to her relatives during these telephone calls. Other than short phone calls every few months with a four or six minute calling card, Plaintiff was permitted only one visit with her family in four years.

7.     In addition to isolating Plaintiff, Defendants verbally abused her over several years, and Defendant Bonkoungou sexually assaulted Plaintiff on a number of occasions. The Defendants led Plaintiff to believe that she had no access to resources and that she could be

exploited and abused without consequence.

8.      Plaintiff seeks redress for these egregious violations of her most basic human and civil rights.  Accordingly, Plaintiff brings this action under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), federal and state labor laws, and common law to recover her promised wages, lawful minimum and overtime wages, the fair and reasonable value of her work, other compensatory damages, punitive damages, and attorneys' fees and costs.

## JURISDICTION

9.      This Court's jurisdiction over the subject matter of this action is established under 28 U.S.C. § 1331, 29 U.S.C. § 201 *et seq.*, and 18 U.S.C. § 1595(a).

10.      This Court has supplemental jurisdiction over the state law claims asserted herein under the doctrine of pendent jurisdiction and pursuant to 28 U.S.C. § 1367(a) because these claims are so closely related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.  This Court also has jurisdiction because the state law claims arise from the same common nucleus of operative facts from which the federal claims arise.

11.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims occurred in this District.

## PARTIES

### Plaintiff

12.      Plaintiff Fatoumata Ouedraogo is a citizen of Burkina Faso.

13.      At the outset of the events that give rise to this Complaint, Plaintiff was living in Burkina Faso.  In approximately February 2008, Plaintiff was admitted into the United States pursuant to a G-5 Visa, which is available for personal employees, attendants, and servants of employees of international organizations.  She has resided in the United States at all other times relevant to this action, and continues to reside in the City of New York.

14.      Upon her arrival to the United States, Plaintiff was working for Defendants at

their residences in New York, New York in the borough of Manhattan.

15.     From at least February 2008 through approximately April 2012, Plaintiff was a "domestic worker" of Defendants as that term is defined by the Fair Labor Standards Act and New York Labor Law.

16.     From at least February 2008 through approximately April 2012, Plaintiff was a personal employee of Defendants, and was not employed as if she were an employee of any government agency or authority.

17.     Plaintiff's native language is Bambara.  Plaintiff's ability to speak and understand English was extremely limited during the time she worked for Defendants.  At all times relevant to this action, Plaintiff did not read or write in any language.

**Defendants**

18.     Upon information and belief, Defendant Bonkoungou served as the Second Counsellor to the Permanent Mission of Burkina Faso to the United Nations from 2008 to sometime in 2012.  Upon information and belief, Defendant Bonkoungou Ouedraogo, who is the wife of Defendant Bonkoungou, served as the Attaché to the Permanent Mission of Burkina Faso to the United Nations during the same time period.

19.     From at least February 2008 through approximately April 2012, Defendants resided in New York, New York.

## STATEMENT OF FACTS

**Defendants' Recruitment of Plaintiff and Trafficking to the United States**

20.     Plaintiff was born in Ivory Coast to parents who were citizens of Burkina Faso. Plaintiff's father died when she was ten or eleven years old, and her mother died when she was approximately fourteen years old.

21.     After Plaintiff's mother's death, Plaintiff moved to Burkina Faso to live with one of her mother's cousins, to whom she refers as "auntie."  Plaintiff worked as "auntie's" domestic servant, cook, and babysitter.  She was not compensated for her work and was treated poorly.

22.     Defendant Bonkoungou Ouedraogo, who is also a cousin of Plaintiff's mother and

4

the younger sister of "auntie," approached Plaintiff in early 2008 and offered her a job working for her and her husband in the United States, taking care of their infant son. Defendant Bonkoungou Ouedraogo told Plaintiff that she and her husband would take care of her, and that they would pay her to take care of their baby. Defendant further promised that after Plaintiff worked for Defendants for five years, she would be eligible for a green card which Defendants would help her obtain. Defendant Bonkoungou Ouedraogo also promised Plaintiff that she could go to school in the United States.

23.     Plaintiff, an orphan who had never been to school and who was essentially trapped in forced labor, viewed the job with the Defendants as an attractive opportunity. She was excited about the possibility of going to school, eager to earn a salary, and hoped to start a new life for herself. She anticipated being able to support her siblings who were struggling to support themselves in Burkina Faso and Ivory Coast after the deaths of their parents.

24.     Defendant Bonkoungou Ouedraogo showed Plaintiff a contract and told Plaintiff that she needed to sign it in order to work in the United States. Because Plaintiff did not read or write in any language, she did not know what language the contract was in or what it said. She followed Defendant Bonkoungou Ouedraogo's instructions and signed the contract but was never provided with a copy of the document.

25.     Over the next several weeks, Defendant Bonkoungou Ouedraogo assisted Plaintiff in applying for a passport, going to the passport office together. After Plaintiff had her passport, Defendant Bonkoungou Ouedraogo took Plaintiff to the U.S. Embassy to get a visa. At the U.S. Embassy, Plaintiff was asked several questions about the terms of her employment, which she answered based on the information provided to her by the Defendants: that she would be taking care of Defendants' child for a term of five years.

26.     Upon information and belief, Defendant Bonkoungou Ouedraogo picked up Plaintiff's visa from the U.S. Embassy when it was ready. Plaintiff left Burkina Faso with Defendant Bonkoungou Ouedraogo on or about February 19, 2008, just after her nineteenth birthday.

27.     On or about February 20, 2008, Plaintiff arrived in New York City with Defendant Bonkoungou Ouedraogo and Defendants' infant son who was approximately nine months old at the time.  Defendant Bonkoungou was already in New York City when they arrived.  Defendant Bonkoungou Ouedraogo held Plaintiff's passport and visa from at least the time that Plaintiff arrived in the United States through the end of Plaintiff's employment with Defendants.

## Forced Labor, Exploitation, and Isolation in the United States

28.     Immediately after arriving in New York, Plaintiff began working in Defendants' home.  Defendants lived in an apartment building in Manhattan, located at 30 River Road on Roosevelt Island.

29.     Plaintiff started working at approximately 7:00 am each morning, when she would attend to the baby, clean him, and feed him.  Plaintiff would then prepare coffee, tea, and breakfast for Defendants.  During the morning, Plaintiff would take care of the baby, do laundry, and clean the apartment.  In the afternoon, Plaintiff would prepare and serve dinner to the Defendants, put the baby to sleep by 8:30 or 9:00 pm, and finish by doing the dishes and cleaning the kitchen.  Because the baby slept in her room, Plaintiff also tended to the baby through the night when he awakened.

30.     Soon after arriving in New York, Defendant Bonkoungou Ouedraogo informed Plaintiff that she would be paid $200 per month for her labor, and that money would be placed in a bank account that Plaintiff would have access to only at the end of her five years of employment.  Having never been paid to work before, and being unaware of the minimum wage requirements under federal and state law, Plaintiff did not know whether this was fair and adequate compensation, or a reasonable way to receive payment of her salary.

31.     A few weeks after Plaintiff arrived in New York, Defendant Bonkoungou Ouedraogo took her to a Chase Bank to open an account.  Defendant Bonkoungou Ouedraogo never provided Plaintiff with the information needed to access to this account.  Plaintiff did not have a debit card and did not know the account number or the PIN number to access the account.

Although Defendants told Plaintiff they were putting $200 per month in this account for Plaintiff she never saw the balance of the account.

32.     In or around December 2010, Defendants had another baby.  Plaintiff was required to take care of both children in addition to her other chores.  Plaintiff's supposed $200 per month "salary" was not increased when she took on the added responsibilities of caring for the second child.

33.     Occasionally, Plaintiff asked Defendants for some money to send home to her sisters and their families.  Defendant Bonkoungou Ouedraogo gave Plaintiff approximately $80 to $100 four times over the course of four years, which Plaintiff, with the assistance of Defendant Bonkoungou Ouedraogo, sent home.

34.     For the first several years of her employment, Plaintiff only knew how to get to a small park near the apartment, the supermarket where she was required to do the grocery shopping for Defendants and other local stores where she completed errands for Defendants.  Other than those local trips, Ms. Ouedraogo was only permitted to leave the apartment in the company of Defendants.  She did not know where the apartment was located or how to navigate the neighborhood in which she lived.

35.     In December 2010, Plaintiff was assigned to take the Defendants' older son to preschool by subway.  Until that time, nearly three years after she arrived, Plaintiff did not know how to ride the subway or travel in New York City.

36.     Plaintiff worked seven days per week.  Every two or three months, Plaintiff asked Defendants for a few hours to herself.  Defendant Bonkoungou Ouedraogo almost always refused these requests.  On only approximately four or five occasions over the course of four years, she allowed Plaintiff to have some time to herself when she was not required to work and could leave the apartment for a few hours.

37.     Plaintiff was not permitted to use Defendants' phone without a phone card.  Because the Defendants never paid her, she could not buy a phone card.  Eager to speak with her family in Burkina Faso and Ivory Coast, Plaintiff periodically asked Defendant Bonkoungou

Ouedraogo for some money to purchase a phone card so she could call her siblings. On rare occasions, Defendant Bonkoungou Ouedraogo would oblige, and would give Plaintiff $2 to purchase a phone card. Plaintiff could only purchase a single four or six minute phone card with the $2 Defendant Bonkoungou Ouedraogo gave her.

38.    Plaintiff could not speak freely on the phone with her family. Defendants monitored her short conversations.

39.    The money Defendants gave Plaintiff to send to her family and for phone cards – approximately $400 – represented the total amount of money Defendants paid Plaintiff for over four years of nearly constant work.

40.    After approximately two years in the United States, Plaintiff began to receive offers from other domestic workers she met in the park or in the building to take on additional babysitting or house-cleaning jobs in the apartment building or the neighboring building. Plaintiff thought this might allow her to have some spending money for herself. She informed Defendants of these opportunities and Defendants permitted her to accept some outside work. However, Defendants required that she turn over all the money she earned from the work to them. Defendants represented to Plaintiff that they would put the money in her bank account, and that she would have access to it at the completion of her employment with Defendants. On one occasion, Plaintiff did not immediately turn over her money, and Defendant Bonkoungou Ouedraogo screamed at her and demanded that Plaintiff turn over the money. Frightened, Plaintiff complied and turned over the money. In all, Plaintiff turned over approximately $2,000 to Defendants in reliance on their representation that the money would be kept for her in a bank account and would be given to her, along with the wages she had earned from Defendants, at the completion of her employment.

**Ms. Ouedraogo is Abused During Her Employment with Defendants**

41.    Throughout the tenure of her employment with Defendants, Defendants subjected Plaintiff to physical and verbal abuse which caused her to fear her employers, and believe that she could not escape from their control and that she would be lost without their alleged

8

assistance.

42.     Defendant Bonkoungou Ouedraogo regularly made Plaintiff believe that she could be deported.  She told Plaintiff that in America, if you do not have your identification documents and you make "a mistake," the police will arrest you and deport you.

43.     Defendant Bonkoungou Ouedraogo regularly told Plaintiff that she could not "run away," asking her, rhetorically, "Where would you go?" and "Who would help you?" insinuating that Plaintiff had no other resources but Defendants.

44.     Defendant Bonkoungou Ouedraogo verbally abused Plaintiff, regularly calling her "lazy" and "stupid" and yelling at her for minor issues, such as taking too long to meet Defendant Bonkoungou Ouedraogo at her car to unload groceries because Plaintiff was waiting for the elevator to arrive.

45.     Defendant Bonkoungou Ouedraogo also falsely accused Plaintiff of sleeping with men, which was insulting and shameful to Plaintiff.

46.     On at least one occasion, Defendant Bonkoungou Ouedraogo threatened Plaintiff with physical abuse.  Plaintiff had accidentally burned food she was cooking for Defendants and their guests, and Defendant Bonkoungou Ouedraogo became angry and told Plaintiff she would beat her.

47.     On at least two occasions, Defendant Bonkoungou sexually assaulted Plaintiff. Twice, he entered the bedroom Plaintiff shared with Defendants' baby when Plaintiff was sleeping, and fondled Plaintiff's breasts.  Plaintiff pushed him away both times, and after the second assault, Plaintiff began to lock the door to the bedroom out of fear.

48.     On one occasion, Defendant Bonkoungou and Plaintiff were alone in the living room together.  Defendant Bonkoungou unzipped his pants and began touching his penis in a sexual manner with Plaintiff present.  Plaintiff fled the room immediately.

49.     On another occasion, after a New Year's party at Defendants' apartment, Defendant Bonkoungou and Plaintiff were alone in the apartment together when he asked her to dance with him, which she refused to do.  Defendant Bonkoungou grabbed her anyway.  Plaintiff

pushed him away and fled the room.

50.     Because of these incidents, Plaintiff lived in a state of fear. She avoided being alone with Defendant Bonkoungou as much as possible and locked the door to the room in which she slept every night.

**Ms. Ouedraogo Flees Defendants' Control**

51.     When Plaintiff cleaned Defendants' apartment, she tried to locate her passport, but was never able to find it.

52.     Plaintiff periodically considered running away from Defendants but several factors prevented her from doing so. Among other things, Plaintiff had no money or identity documents. She feared being without documents because Defendant Bonkoungou Ouedraogo had told her she could be arrested and deported without them. Finally, Plaintiff did not believe she had anywhere to go or anyone to help her.

53.     In or around April 2012, Defendant Bonkoungou Ouedraogo informed Plaintiff that she had to return to Burkina Faso with Defendants because their posts in the United States had ended.

54.     Plaintiff reminded Defendants that they promised her that she could stay in the United States after their post had ended and asked Defendants for her passport and Chase bank card several times. In response, Defendant Bonkoungou Ouedraogo became very angry and yelled at Plaintiff, telling her "You are nothing! You and your family are sheep!" In response to Plaintiff's request for the return of her bank card, Defendant Bonkoungou Ouedraogo stated, "That's my money; I'm not going to give it you." In response to Plaintiff's request for her passport, Defendant Bonkoungou Ouedraogo eventually gave it her later and said, "I don't want a problem; don't go to the police."

55.     Defendant Bonkoungou Ouedraogo told Plaintiff that her visa had already expired, and that she would be arrested if she stayed in the United States because she would be without status.

56.     Eventually, in April 2012, Plaintiff fled the apartment with her passport and some

clothes.

57.     Plaintiff walked to a local police station close to the apartment.  She thought of going to the police after Defendant Bonkoungou Ouedraogo returned the passport and warned her not to go to the police.  With broken English, Plaintiff informed the police officers that she had been treated badly and could not stay with her employers.  Police officers found a French interpreter, a language with which Plaintiff is more familiar than English, and helped her find a temporary shelter placement.

## Violations of the Employment Laws and Breach of Contract

58.     At all relevant times to this action, Defendants had the power to hire and fire Plaintiff.  Defendants also had the power to terminate Plaintiff's employment.

59.     At all relevant times to this action, Defendants had the power to set Plaintiff's schedule.

60.     At all relevant times to this action, Defendants jointly supervised Plaintiff.

61.     At all relevant times to this action, Defendants jointly controlled Plaintiff's work conditions.

62.     At all relevant times to this action, Defendants were employers of Plaintiff as defined under applicable employment laws. 29 U.S.C. § 203(g); N.Y. Lab. L. § 190.

63.     Defendants only paid Plaintiff a few hundred dollars over the course of four years, far less than what she is owed for the thousands of hours she worked.  They also stole the approximately $2,000 that Plaintiff was able to earn babysitting for other families.

64.     Defendants did not pay Plaintiff the statutory federal or state minimum wage rate.

65.     Defendants did not pay Plaintiff the required overtime pay over forty-four hours of work per week as required by New York State law.

66.     Defendants did not inform Plaintiff about the minimum wage or overtime pay requirements.

67.     Defendants did not pay Plaintiff for the spread of hours pay as required under New York State law: an additional hour of pay for those days in which the interval between the

11

time Plaintiff started and ended was more than ten hours.

68.     Upon information and belief, Defendants did not maintain proper records for Plaintiff's work schedules and pay.  Defendants did not provide her with wage statements as required by both federal and state law.

69.     At all times relevant to this action, Defendants did not post any information indicating the laws regarding the minimum wage and overtime pay, or otherwise provide Plaintiff any information about her rights under federal or state employment laws.

70.     Defendants' failure to inform Plaintiff of her rights was willful and/or intentional.

71.     Defendants did not pay Plaintiff the salary as agreed in the Parties' oral contract or, upon information and belief, the amounts necessarily referenced in the written contract the Parties signed, as described below.

72.     In 2008, Congress amended the Trafficking Victims Protection Reauthorization Act to prevent trafficking of domestic workers with G-5 visas.  8 U.S.C. § 1375c; P.L. 110-457 Sec. 203.

73.     Pursuant to those amendments, the United States State Department issued a new provision in the Foreign Affairs Manual ("FAM").  Under 9 FAM 41.21 N6.4, an employee of an international organization or mission seeking to obtain a G-5 visa for their personal attendant must present an employment contract to the U.S. government "in both English and (if the applicant does not understand English) a language understood by the applicant, that has been signed by both the applicant and the employer to demonstrate that the employee will receive a fair wage, and that the employee understands his or her duties and rights regarding salary and working conditions."  In addition, the contract must, among other things: (i) describe the work to be performed; (ii) specify the normal working hours and number of hours of work to be completed per week; (iii) indicate the amount of time the employee will have off, including a minimum of one full day per week, the number of paid holidays, sick days and vacation days;

(iv) state the hourly wage to be paid to the domestic employee which must be the greater of the minimum wage under U.S. Federal and state law or the prevailing wage for all working hours; (v) state when the wages will be paid, either weekly or biweekly; (vi) provide the terms of payment for over-time work; (vii) state the manner in which employees will be paid – either by check or electronic transfer; (viii) state that the employer agrees to abide by all Federal, state and local laws of the United States; and (ix) provide that the employee will maintain access to their passport and visa.

74.     Upon information and belief, Defendants presented a contract with the required terms pursuant to 9 FAM 41.22 to the U.S. Embassy in Burkina Faso in order to obtain G-5 visas for Plaintiff.  As described more fully above, the actual conditions of Plaintiff's employment did not satisfy the requirements of 9 FAM 41.22

### FIRST CLAIM FOR RELIEF

**Trafficking Victims Protection Reauthorization Act
Forced Labor: 18 U.S.C. §§ 1589, 1595**

75.     Plaintiff realleges and incorporates, as though fully set forth herein, each and every allegation contained in the above paragraphs.

76.     As set forth in 18 U.S.C. § 1595, Plaintiff may bring a civil action against the perpetrators of these violations and "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in a violation" of these provisions.

77.     The forced labor provision of the TVPRA, 18 U.S.C. § 1589, establishes: "(a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious

harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, shall be punished as provided under subsection (d)."

78.     Defendants were perpetrators of the violations of 18 U.S.C. § 1589.

79.     Defendants knowingly obtained Plaintiff's labor and services through physical threats, coercion, isolation, intimidation, and by maintaining control over Plaintiff's passport and visa.

80.     Defendants developed and participated in a scheme, which included, but was not limited to, confiscating and keeping Plaintiff's passport and visa, intending to cause Plaintiff to believe that if she did not perform the labor or services, she could be deported, and that Plaintiff would be provided her promised wages and a green card upon the completion of her five-year term of employment with Defendants.

81.     As a result of Defendants' conduct, Plaintiff has suffered damages in an amount to be determined at trial.

82.     Pursuant to 18 U.S.C. Section 1595(a), Plaintiff is entitled to recover compensatory and punitive damages and reasonable attorneys' fees for Defendants' wrongful conduct.

## SECOND CLAIM FOR RELIEF

### Trafficking Victims Protection Reauthorization Act
### Trafficking With Respect to Peonage, Slavery, Involuntary Servitude, or Forced Labor:
### 18 U.S.C. §§ 1590, 1595

83.     Plaintiff realleges and incorporates, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 74.

84.     As set forth in 18 U.S.C. § 1595, Plaintiff may bring a civil action against the perpetrators of these violations and "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in a violation" of these provisions.

85.     The trafficking into peonage, slavery, involuntary servitude, or forced labor provision of the TVPRA, 18 U.S.C. § 1590, provides: "Whoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter shall be fined under this title or imprisoned not more than 20 years, or both…"

86.     Defendants were perpetrators of the violations of 18 U.S.C. § 1590.

87.     As set forth herein, Defendants knowingly recruited, harbored, transported, provided, and obtained Plaintiff to provide forced labor and services to Defendants in violation of laws prohibiting forced labor.

88.     Defendants knowingly induced a system of servitude by means of physical threats, coercion, isolation, intimidation, by maintaining control over Plaintiff's passport and visa, and by causing Plaintiff to believe that she would be paid the wages Defendants' promised her upon completion of her five-year term of employment.

89.     As a result of Defendants' conduct, Plaintiff has suffered damages.

90.     Pursuant to 18 U.S.C. Section 1595(a), Plaintiff is entitled to recover compensatory and punitive damages and reasonable attorneys' fees for Defendants' wrongful conduct in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF

**Trafficking Victims Protection Reauthorization Act**
**Unlawful Conduct With Respect To Documents In Furtherance Of Trafficking, Peonage, Slavery, Involuntary Servitude, Or Forced Labor**
**18 U.S.C. §§ 1595, 1592**

91.     Plaintiff realleges and incorporates, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 74.

92.     As set forth in 18 U.S.C. § 1595, Plaintiff may bring a civil action against the perpetrators of these violations and "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in a violation" of these provisions.

93.     18 U.S.C. § 1592 makes it unlawful to "knowingly destroy[], conceal[], remove[], confiscate[], or possess[] any actual or purported passport or other immigration document, or any other actual or purported government identification document, of another person— (1) in the course of a violation of section[s] . . . 1589, 1590 . . . (2) with intent to violate section[s] . . . 1589, 1590; or (3) to prevent or restrict or to attempt to prevent or restrict, without lawful authority, the person's liberty to move or travel, in order to maintain the labor or services of that person, when the person is or has been a victim of a severe form of trafficking in persons . . . ."

94.     Defendants were perpetrators of the violations of 18 U.S.C. § 1592.

95.     Section 7102(9) of the Trafficking Victims Protection Act of 2003 ("TVPA") defines a "severe form of trafficking" as, among other things, "the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery." 22 U.S.C. § 7102(9).

96.     Defendants knowingly concealed, removed, confiscated, and/or possessed Plaintiff's passport and other immigration-related documents for over four years to prevent or restrict Plaintiff's liberty to move or to travel, and lied about Plaintiff's legal rights in order to

maintain Plaintiff's labor or services.  Plaintiff is therefore a victim of a severe form of trafficking as defined by the TVPA and, therefore, Defendants' acts violated 18 U.S.C. § 1592.

97.     As a result of Defendants' conduct, Plaintiff has suffered damages.

98.     Pursuant to 18 U.S.C. Section 1595(a), Plaintiff is entitled to recover compensatory and punitive damages and reasonable attorneys' fees for Defendants' wrongful conduct in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF
### Fair Labor Standards Act (FLSA) Minimum Wage
### 29 U.S.C § 201 *et seq.*

99.     Plaintiff realleges and incorporates, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 74.

100.     Because Plaintiff was employed as a domestic worker in a household at times relevant to this action, Plaintiff was engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 202(a).

101.     Section 6(a) of the FLSA, 29 U.S.C. § 206(a), provides that any employee engaged in commerce shall be paid wages at a specific rate during the period of Plaintiff's employment.

102.     In all periods of Plaintiff's employment, Defendants knowingly failed to pay Plaintiff an hourly rate of at least the federal minimum wage, in violation of 29 U.S.C. §§ 206 and 216.

103.     Defendants' willful and intentional failure to pay Plaintiff the minimum wage violates 29 U.S.C. § 201, *et seq.*, and U.S. Department of Labor regulations.

104.     Defendants did not act in good faith when they failed to comply with the federal minimum wage law and only paid Plaintiff approximately $400 over the course of four years of employment.

105.     Plaintiff is entitled to an award of damages for unpaid minimum wages in amounts equal to the proper federal minimum wage she should have been paid, plus liquidated damages, attorneys' fees, and costs in amounts to be determined at trial.

## FIFTH CLAIM FOR RELIEF
### New York State Minimum Wage Law
### N.Y. Lab. L. §§ 190 et seq. and 650 et seq.

106.     Plaintiff realleges and incorporates, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 74.

107.     At all times relevant to this action, Plaintiff was employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

108.     At all times relevant to this action, Defendants were employers within the meaning of the New York Labor Law.

109.     In all periods of Plaintiff's employment, Defendants failed to pay Plaintiff the proper minimum wage, as required by New York Labor Law.  N.Y. Lab. L. § 650 et seq.

110.     Defendants failed to display, in a place accessible to employees and in a visually conspicuous manner, the notices of employee rights and to receive wages and overtime pay as is required under the New York Labor Law.  N.Y. Lab. L. § 680(3); 12 N.Y.C.R.R. § 137-2.3.

111.     Defendants knowingly, willfully, and intentionally failed to maintain accurate records and failed to account for all hours Plaintiff regularly worked, as they were required to do by law.  N.Y. Lab. L. § 195.

112.     Defendants' failure to pay Plaintiff the minimum wage was willful and/or in bad faith.

18

113.     Plaintiff is entitled to an award of damages for unpaid minimum wages in an amount equal to the proper state minimum wage he should have been paid, plus liquidated damages, attorneys' fees, and costs.

### SIXTH CLAIM FOR RELIEF
**New York State Overtime Law**
**N.Y. Lab. L. §§ 190 et seq. and 650 et seq.; 12 N.Y.C.R.R. § 142-2.2**

114.     Plaintiff realleges and incorporates, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 74.

115.     Defendants failed to pay Plaintiff overtime premiums for her work in excess of forty-four (44) hours per week, as required for a residential employee in violation of New York Labor Law §§ 190 et seq. and 650 et seq. and New York Department of Labor regulations, 12 N.Y.C.R.R. § 142-2.2.

116.     Defendants' failure to pay Plaintiff overtime pay was willful and/or in bad faith.

117.     Plaintiff is entitled to an award of damages for overtime pay for work over forty-four (44) hours per week in an amount equal to the proper overtime premiums he should have been paid, plus liquidated damages, attorneys' fees, and costs in amounts to be determined at trial.

### SEVENTH CLAIM FOR RELIEF
**New York Labor Law, Spread of Hours Pay**
**N.Y. Lab. L. §§ 190 et seq. and 650 et seq.; 12 N.Y.C.R.R. § 142-2.4**

118.     Plaintiff realleges and incorporates, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 74.

119.     Defendants failed to pay Plaintiff one extra hour's pay for every day in which the interval between the beginning and end of Plaintiff's work day exceeded ten hours, in violation

of N.Y.C.R.R. § 142-2.4, in violation of N.Y. Lab. L. §§ 190 *et seq.* and 650 *et seq.* and New York State Department of Labor regulations, 12 N.Y.C.R.R. § 142-2.4.

120.   Defendants' failure to pay Plaintiff spread of hours pay was willful and/or in bad faith.

121.   Plaintiff is entitled to an award of an extra hour's pay for every day that Plaintiff worked in excess of ten hours, liquidated damages, attorneys' fees, and costs in amounts to be determined at trial.

## EIGHTH CLAIM FOR RELIEF
### New York Labor Law, Frequency of Payments
### N.Y. Lab. L. § 191(1)(a)(i)

122.   Plaintiff realleges and incorporates, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 74.

123.   New York Labor Law requires employers to pay manual laborers each week, and to pay promised wages for every hour worked.  N.Y. Lab. L. §§ 190, 191, *et seq.*

124.   Plaintiff did not receive payment of wages for hours worked within seven calendar days after the end of the week in which the wages were earned, in violation of N.Y. Lab. L. § 191(1)(a)(i).

125.   Defendants' failure to pay Plaintiff the promised wages was willful and/or not in good faith.

126.   Plaintiff is entitled to her promised wages, plus liquidated damages, attorneys' fees, and costs in amounts to be determined at trial.

## NINTH CLAIM FOR RELIEF

### Breach of Contract

127.    Plaintiff realleges and incorporates, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 74.

128.    Plaintiff and Defendants entered into a written contract, whereby, upon information and belief, the Parties agreed at a minimum to the terms mandated by the Foreign Affairs Manual, 9 FAM 41.22.  These minimum terms include, among other things, that the written contract must: (i) describe the work to be performed; (ii) specify the normal working hours and number of hours of work to be completed per week; (iii) indicate the amount of time the employee will have off, including a minimum of one full day per week, the number of paid holidays, sick days and vacation days; (iv) state the hourly wage to be paid to the domestic employee which must be the greater of the minimum wage under U.S. Federal and state law or the prevailing wage for all working hours; (v) state when the wages will be paid, either weekly or biweekly; (vi) provide the terms of payment for over-time work; (vii) state the manner in which employees will be paid – either by check or electronic transfer; (viii) state that the employer agrees to abide by all Federal, state and local laws of the United States; and (ix) provide that the employee will maintain access to their passport and visa.

129.    Defendants breached the terms of the Parties' written contract by, among other things, failing to pay Plaintiff for the domestic services that she performed, pay overtime wages and provide Plaintiff with access to her visa and passport during the time that she was employed by the Defendants.

130.    Plaintiff was harmed by Defendants' breach of the written contract.

131.    Plaintiff is entitled to recover damages in amount to be proven at trial.

## TENTH CLAIM FOR RELIEF

### Unjust Enrichment

132.    Plaintiff realleges and incorporates, as though fully set forth herein, each and every allegation contained in paragraphs 1 through 74.

133.    During the course of her employment with Defendants, Plaintiff, with the consent of Defendants, accepted a number of jobs from individuals other than Defendants.

134.    Plaintiff was compensated for that work in an amount that Plaintiff estimates at $2,000.

135.    In accordance with the demands of Defendant Bonkoungou Ouedraogo, and based on representations from Defendants Bonkoungou Ouedraogo that the funds would be placed in an account for safekeeping, Plaintiff gave all compensation earned from those outside jobs to Defendant Bonkoungou Ouedraogo.

136.    Defendants were unjustly enriched through their confiscation of the wages Plaintiff earned from outside babysitting and housecleaning work.

137.    Equity and good conscience require that Plaintiff receive restitution.

138.    Plaintiff is entitled to recover damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, based on the allegations set forth above and/or additional facts that will be revealed through discovery, Plaintiff respectfully requests that a judgment be granted as follows:

1.    Awarding Plaintiff unpaid minimum wages, plus liquidated damages, interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 201 *et seq.*;

2.    Awarding Plaintiff unpaid wages, including promised wages, minimum wages overtime pay, and spread-of-hours pay, plus liquidated damages, interest, attorneys' fees and costs, pursuant to New York Labor Law § 190, *et seq.*;

3.    Awarding Plaintiff punitive and compensatory damages, the reasonable and/or fair market value of services provides to Defendants, attorneys' fees and costs, and such other relief as the Court may deem just and proper pursuant to the Trafficking Victims Protection Reauthorization Act of 2008, 18 U.S.C. § 1595;

4.    Awarding Plaintiff pre-judgment interest and post-judgment interest as allowed by law;

5.    Directing Defendants to turn over all other personal belongings remaining in Defendants' control, and awarding Plaintiff compensatory and punitive damages due to the their failure to give Plaintiff access to her passport, bank account, and earned wages;

6.    Declaring the written contract between the parties a valid contract and awarding Plaintiff the value of the terms of the contract, or, in the alternative, awarding Plaintiff the reasonable and/or fair market value of services provided to Defendants in good faith pursuant to Plaintiff's claims for unjust enrichment;

7.    Awarding Plaintiff such other legal and equitable relief as the Court may deem just and proper.

Dated: New York, New York
      February 24, 2015

                                          Respectfully submitted,

                                      By: _____

                                      DECHERT LLP
                                      Jeffrey A. Brown
                                      Rebecca Kahan Waldman
                                      Benjamin Rose
                                      Negin Hadaghian
                                      1095 Avenue of the Americas
                                      New York, New York 10036
                                      Telephone: (212) 698-3500
                                      Facsimile: (212) 698-3599

                                      *Attorneys for Plaintiff Fatoumata*
                                      *Ouedraogo*

2934106